IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BEAM, et al.          :
                                  :
    v.                            :   Civil Action No. DKC 14-3838
                                  :
DILLON'S BUS SERVICE,              :
    INC, et al.                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wage and hour law case is Plaintiffs' unopposed motion for approval of the parties' Settlement Agreements, which resolve the claims of Plaintiffs Christopher Beam, George Thomas, and Marquese Ford ("Plaintiffs"), for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (ECF No. 20).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed Settlement Agreements represent a fair and reasonable resolution of a *bona fide* FLSA dispute, they will be approved.

**I.   Background**

Plaintiff Beam alleges that he was employed as a dispatcher for Defendants Dillon's Bus Service, Inc. and Coach USA, Inc. ("Defendants") from November 2012 until October 2014; Plaintiff

---

[1] Also pending is a motion to dismiss or in the alternative for summary judgment filed by Defendant Coach USA, Inc. (ECF No. 14). This motion will be denied as moot, as Plaintiffs' motion to approve the parties' settlement will be granted.

Thomas alleges that he was employed as a dispatcher for Defendants from October 2012 until October 2014; and Plaintiff Ford alleges that she was employed as a scheduler for Defendants from March 2008 until July 2014.  Plaintiffs assert that they consistently worked over 40 hours per week for Defendants, and that this overtime was recorded when they "clocked in" and "clocked out" on Defendants' time card machine.  According to Plaintiffs, Defendants knew exactly how many hours they were working each week because all hours worked were reflected in their paystubs.  Despite the fact that Plaintiffs complained on multiple occasions to management about their unpaid overtime wages, Plaintiffs allege that Defendants ignored their complaints and continued denying Plaintiffs their rightfully earned time and half wages for the hours they worked in excess of 40 per week as required by the FLSA and Maryland Wage and Hour Law ("MWHL").  Defendants terminated Plaintiff Ford in July 2014 and Plaintiffs Beam and Thomas on October 31, 2014.

Plaintiffs Beam and Thomas filed the instant action on December 11, 2014. (ECF No. 1).  On January 23, 2015, Defendant Dillon's Bus Service, Inc. ("Dillon's") answered the complaint (ECF No. 9), and Defendant Coach USA, Inc. ("Coach USA") moved to dismiss (ECF No. 10).  Plaintiffs then filed a first amended complaint, in which Plaintiff Ford joined as a Plaintiff.  (ECF

No. 12).  The first amended complaint alleges that Defendants violated the FLSA, MWHL, and the Maryland Wage Payment and Collection Law ("MWPCL") by failing to pay Plaintiffs overtime wages for the hours they worked per week in excess of forty.  On February 23, 2015, Dillon's answered the complaint and Coach USA again moved to dismiss the complaint or in the alternative for summary judgment.  (ECF Nos. 14 and 15).

On May 19, 2015, the parties participated in mediation with retired United States District Court Judge Legg, and on June 23, 2015 the parties executed Settlement Agreements.  (ECF No. 20-1).  On June 25, 2015, Plaintiffs filed under seal an unopposed motion to approve the parties' Settlement Agreements, along with copies of the proposed Settlement Agreements, a memorandum outlining the reasons why the court should approve the settlement, a proposed order, and Plaintiffs' counsel's billing records pertaining to this suit.  (ECF Nos. 20-1, 20-2, 20-3, and 20-4).  On June 26, the parties filed a joint stipulation to unseal the motion to approve the settlement.  (ECF No. 26).  This motion will be unsealed.[2]  In this motion, Plaintiffs request that the court:  (1) approve the settlement, (2) hold Defendant Coach USA's pending motion to dismiss in abeyance

---

[2] The parties' Settlement Agreements recognize that certain information will be filed publicly in the process of seeking court approval.  They nevertheless agreed to keep non disclosed information confidential.

pending its decision on the unopposed motion to approve the settlement, and (3) if the motion to approve the settlement is granted, deny as moot Coach USA's motion to dismiss.

The Settlement Agreement pertaining to Christopher Beam states that, upon court approval, Defendants will pay Plaintiff Beam $16,627, on condition that they receive a completed W-9 Tax Form for Mr. Beam. (ECF No. 20-1, at 4). The agreement also states that Plaintiffs' counsel, The O'Neal Firm, LLP, will be paid $14,500 for "attorneys' fees, costs, and other expenses incurred by and on behalf of Mr. Beam[.]" (*Id.*) The Settlement Agreement pertaining to George Thomas states that, upon court approval, Defendants will pay Plaintiff Thomas $22,764, on condition that they receive a completed W-9 Tax Form for Mr. Thomas. (ECF No. 20-1, at 15). The agreement also states that Plaintiffs' counsel will be paid $14,500 for "attorneys' fees, costs, and other expenses incurred by and on behalf of Mr. Thomas[.]" (*Id.*). The Settlement Agreement pertaining to Marquese Ford states that, upon court approval, Defendants will pay Plaintiff Ford $22,764, on condition that they receive a completed W-9 Tax Form for Ms. Ford. (ECF No. 20-1, at 26). The agreement also states that Plaintiffs' counsel will be paid $14,500 for "attorneys' fees, costs, and other expenses incurred by and on behalf of Ms. Ford[.]" (*Id.*). The Settlement

Agreements also specify in paragraph 12 that Plaintiffs are responsible for any tax consequences or liabilities arising from the payments made by Defendants under the agreements.

The Settlement Agreements provide that, in exchange for their various settlement amounts, Plaintiffs agree to a general release of all claims against Defendants and upon court approval of the Settlement Agreements, dismissal of this lawsuit with prejudice. (*Id.* ¶¶ 4-7, 24-25). The Settlement Agreements also contain *inter alia* a partial confidentiality provision in paragraph 8 and a non-disparagement clause in paragraph 10, pursuant to which each party agrees not to criticize the other party in order to protect the parties' interests in maintaining their reputations. (*Id.* at 6-8, 17-19, 28-29). Moreover, paragraph 7 requires Plaintiffs to agree that:

> the consideration set forth in [the agreements] is being exchanged to resolve all claims, known and unknown, by the Parties, for [Plaintiffs] confidentiality, and payment of [Plaintiffs] attorneys' fees, costs, and expenses. The Parties warrant that the consideration that [Plaintiffs are] receiving represents full satisfaction of all claims against [Defendants].

**II. Analysis**

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and

5

employees, the statute's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed. *See* 29 U.S.C. § 216(c). Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g., Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D.Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010). Pursuant to *Lynn's Food*

*Stores*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355. Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D.Md. Aug. 31, 2011) (*citing Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010)). Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009) (collective action); *Duprey v. Scotts Co. LLC,* 30 F.Supp.3d 404, 409 (D.Md. 2014) (applying the same factors to a settlement that involved only individual claims). Finally, if attorneys' fees

are included in the settlement agreement, the court must assess the reasonableness of the attorneys' fees. *Id.* at 408.

### A. *Bona Fide* Dispute

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 WL 3671569, at *2 (D.Md. July 22, 2014). Here, the crux of the dispute is whether Plaintiffs are entitled to recover overtime wages from Defendants, or were exempt. Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. If an employer violates Section 207, he is liable for unpaid overtime and an equal amount of liquidated damages. 29 U.S.C. § 216. Plaintiffs allege that the duties they performed were non-exempt from overtime compensation, and therefore, that they are owed overtime wage payments for all hours they worked in excess of 40. Plaintiffs also have documentation of the overtime hours that they worked. Defendants deny liability, contending that Plaintiffs were not

owed overtime compensation because their duties as dispatchers (Plaintiffs Beam and Thomas) and as a scheduler (Plaintiff Ford) qualify them for the Administrative Employee Exemption and/or the Motor Carrier Exemption of the FLSA.  In addition, although Plaintiffs have alleged that Dillon's was their employer and that Coach USA was a joint employer, Defendant Coach USA, denies that it was Plaintiffs' employer and any associated liability for wage payments.  Because Defendants have asserted several defenses to liability and provided factual bases for these defenses, a *bona fide* dispute exists as to Defendants' liability under the FLSA.

   **B.   Fairness & Reasonableness**

Upon review of the parties' filings and after considering the relevant factors enumerated by the *Lomascolo* court, the Settlement Agreements appear to be a fair and reasonable compromise of the parties' *bona fide* dispute.

The parties agreed to settle at an early stage of the proceedings, while Defendant Coach USA's motion to dismiss is still pending and formal discovery has yet to occur.  The parties believe that this case "involves serious questions of fact and law which make the outcome of continued litigation uncertain.  If this settlement is not approved, the parties anticipate litigation [will] conclude in 2017, resulting in

significantly increased legal fees and costs for all parties." (ECF No. 20-2, at 4). Plaintiffs assert, however, that "the parties had full access to virtually all of Plaintiffs' pay records that reflected the overtime hours worked. Also, the parties exchanged documents and information that challenge their respective positions." (ECF No. 20-2, at 4). Because both parties had access to Plaintiffs' payroll records and exchanged additional documents, the parties have had sufficient opportunity to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11.

Additionally, there is no evidence that the proposed Settlement Agreements – which are the product of months of ongoing negotiations and a twelve-hour mediation session during which both parties were represented by counsel – is the product of fraud or collusion. Plaintiffs' counsel, Alan Mitchell and Arda O'Neal, are members of an employment law firm, The O'Neal Firm, LLP. Mr. Mitchell is a fifth year attorney and Ms. O'Neal has been practicing employment law for nineteen years. Plaintiffs' counsel appear to be well-versed in employment law and capable of representing Plaintiffs' interests. Although the

10

parties have not engaged in formal discovery, they have exchanged information, which has purported "revealed material disputes of fact and law[,]" which permitted Plaintiffs' counsel to reassess Plaintiffs' position and revalue the case. (ECF No. 20-2, at 5).

As to the relationship between the amount of the settlement and Plaintiffs' potential recovery, the Settlement Agreements require Defendant to pay Plaintiffs on a pro rata basis according to their individual overtime hours worked and liquidated damages in the following amounts: Plaintiff Beam $16,627 (back pay = $8,314; liquidated damages = $8,313), which is 63% of the back pay he would have recovered if he prevailed at trial under his view of the facts; Plaintiff Thomas $22,764 (back pay = $11,382; liquidated damages = $11,382), which is 59% of the back pay he would have recovered if he prevailed at trial under his view of the facts; Plaintiff Ford $22,764 (back pay = $11,382; liquidated damages = $11,382), which is 74% of the back pay she would have recovered if she prevailed at trial under her view of the facts. As Plaintiffs' counsel notes, however, "success on the merits is uncertain due to the serious questions of fact and law[.]" (ECF No. 20-2, at 5). Plaintiffs alleged that pursuant to 29 U.S.C. § 207, Defendants were required to pay them "not less than one and one half times their regular

11

rate of pay for all hours worked in excess of 40 in a workweek, *unless the employees are otherwise exempt.*" (*Id.* at 6) (emphasis added). Plaintiffs contend that they are non-exempt employees but Defendants dispute this issue, arguing that Plaintiffs are exempt under the Administrative Employee Exemption[3] and/or the Motor Carrier Exemption[4] of the FLSA. Defendant Coach USA also disputes that it owes Plaintiffs any compensation, arguing that there was never an employment relationship between itself and Plaintiffs and therefore that it

---

[3] The FLSA "White Collar" Exemption excludes from overtime coverage "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited . . . by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). The regulations promulgated by the Secretary define an administrative employee as someone: whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance," and who is paid on a salary basis at a rate of not less than $455 per week. 29 C.F.R. § 541.200; *Torres v. Gristedes Operating Corp.,* 628 F.Supp.2d 447, 455 (2008) (noting that this exemption is called the "white collar" exemption).

[4] The FLSA "Motor Carrier" Exemption excludes from overtime coverage "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of" the Motor Carrier Act. 29 U.S.C. § 213(b)(1). "The Secretary of Transportation has authority under the MCA 'to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.'" *Walters v. Am. Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1226-27 (11th Cir. 2009) (citations omitted).

12

could not be liable under the FLSA for overtime violations. Although Plaintiffs could potentially recover greater sums at trial if they are able to prove they are non-exempt and that Defendant Coach USA was their employer, they also risk recovering less than the settlement amounts or nothing at all if Defendants succeed in proving they are exempt employees. Moreover, although the Settlement Agreements contain a general release of claims not specified in the complaint,[5] this provision does not render the agreements unreasonable as Plaintiffs appear to be adequately compensated for the release, seeing as the factual disputes in this case make it uncertain whether Plaintiffs would ultimately recover overtime wages should this case proceed to trial. *See Duprey,* 30 F.Supp.3d at 410 ("[I]f the employee is compensated reasonably for the release executed, the settlement can be accepted, and [the court] is not required to evaluate the reasonableness of the settlement as to non-FLSA claims.").

In light of the risks and costs to both parties in proceeding with this lawsuit, the settlement amounts appear to

---

[5] The release provision does not include any potential workers compensation or unemployment benefit claims by Plaintiffs, nor does it release any rights or claims arising after the effective date of the Settlement Agreements. (ECF No. 20-1 ¶ 4).

be a reasonable compromise over issues that are actually in dispute.

### C. Attorneys' Fees & Costs

Next, the Settlement Agreements' provisions regarding attorneys' fees must be assessed for reasonableness. A number of recent cases decided by the United States District Court for the Middle District of Florida, relying upon *Lynn's Food Stores*, have described the court's task in this regard as assuring "'both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Dees v. Hydradry, Inc.,* 706 F.Supp.2d 1227, 1243 (M.D.Fla. 2010) (*quoting Silva v. Miller,* 307 Fed.Appx. 349, 351 (11th Cir. 2009)). Thus, if the motion demonstrates that the proposed fee award was "agreed upon separately and without regard to the amount paid to the plaintiff, then, unless . . . there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Mgmt. Co.,* 715 F.Supp.2d 1222, 1228 (M.D.Fla. 2009). These cases appear to suggest, in other words, that so long as the amount paid to the

14

plaintiffs' counsel does not affect the amount paid to the plaintiffs themselves, the fee award need not be reasonable.

Section 216(b) expressly provides, however, that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, where judgment is entered in favor of the plaintiffs on their FLSA claims, an award of "reasonable" attorneys' fees is mandatory. Of course, in the context of a settlement, judgment is not entered in favor of either party — in fact, the defendants typically deny that any FLSA violation has occurred, as do the Defendants in this case. It would make little sense to require the amount of fees awarded to be reasonable where the plaintiffs prevail on the merits, but to abandon that requirement altogether where the parties agree to settle the case. Moreover, from a practical standpoint, any time that plaintiffs would receive less than the full value of their claims in a settlement, there is a strong likelihood that the amount paid to the plaintiffs would be adversely affected by an exorbitant award of attorneys' fees. *See Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F.Supp. 110, 110 (S.D.N.Y. 1997) (plaintiffs' counsel "should have perceived that every dollar

15

the defendants agreed to pay [the attorneys] was a dollar that defendants would not pay to the plaintiffs").

Accordingly, the reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Dees,* 706 F.Supp.2d at 1243. As explained by Judge Grimm in *Duprey,* 30 F.Supp.3d at 412:

> Traditionally, "[i]n calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC,* 838 F.Supp.2d 346, 348 (D.Md. 2012) (citing *Grissom v. The Mills Corp.,* 549 F.3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 890 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see Thompson v. HUD,* No. MJG–95–309, 2002 WL 31777631, at *6 n.18 (D.Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules (D.Md. Jul. 2011), this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc.,* 192 F.R.D. 494, 509 (D.Md. 2000).

As noted, the Settlement Agreements provide that Defendants will pay Plaintiffs' counsel a total of $43,500 in "attorneys' fees, costs, and other expenses incurred by and on behalf of"

16

Plaintiffs.  (ECF No. 20-1 ¶ 3).  Plaintiffs assert that this amount is reasonable because it represents less than one third of Plaintiffs' actual attorneys' fees, which amounted to $156,310.35, and because of the "uncertainty of protracted litigation, the serious questions of fact and law involved and Defendants' defenses."  (ECF No. 20-2, at 7).

In reviewing the billing records submitted by Plaintiffs' counsel, it appears that the paralegal, Mr. Maloney, spent very little time on this case, and that the two attorneys performed almost all of the services contained in their billing records. The billing rates for Mr. Mitchell and Ms. O'Neal of $300 per hour and of paralegal Michael Maloney of $150 per hour are within the presumptively reasonable rates set forth in Appendix B.[6]  The attorneys and paralegal collectively billed 533.75 hours on this case, which amounted to $156,310.35 in total legal fees. Plaintiffs' counsel attached an exhibit detailing:  the date on which each service was performed; the attorney/paralegal who performed the service; a short description of the service; the number of hours spent performing the service; the rate at which

---

[6] Mr. Mitchell has been practicing for five years and Ms. O'Neal has been practicing for nineteen years.  Appendix B to the Local Rules (2014 ed.) states that a reasonable hourly rate for attorneys admitted to the bar for five to eight years is $165-300, for lawyers admitted to the bar for fifteen to nineteen years is $275-425, and for paralegals and law clerks is $95-150.

the client was billed; and the total amount billed for the service. (ECF No. 20-3). In their memorandum, Plaintiffs' counsel also provides a summary of the services they have performed in representing Plaintiffs in this case:

> (1) meeting with Plaintiffs and communicating with Plaintiffs by telephone numerous times; (2) investigating potential claims in this case; (3) performing detailed damage calculations; (4) reviewing Plaintiffs' paycheck stubs; (5) drafting all necessary pleadings and motions; (6) participating in continuous negotiations with Defendants[;] (7) preparing Plaintiffs for mediation; and (8) attending the May 19, 2015 mediation session.

(ECF No. 20-2). Plaintiffs' counsel has performed numerous services since October 2014 in preparing this case, including factual development of multiple Plaintiffs' claims and damages, drafting pleadings and motions, ongoing negotiations with Defendants, and attending a twelve-hour mediation that resulted in a successful settlement and a considerable recovery for their clients. Taking into consideration that Plaintiffs' counsel has agreed to reduce their fees to $43,500, which when divided by the attorneys' hourly rates amounts to about 145 hours of time spent on this case, the billed hours are reasonable.

In light of the facts of this case and the numerous disputes described above, this compromised provision requiring

18

Defendants to pay Plaintiffs' counsel $43,500 in attorneys' fees and costs is reasonable and will be approved.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to approve the parties' Settlement Agreements will be granted. A separate order will follow.

```
                                    /s/
```
DEBORAH K. CHASANOW
United States District Judge